## OPINION OF THE JUSTICES.

*Coördinate departments of the government—How far independent of each other.*

The governor and council, in pursuance of the provisions of Article XXXIII of the constitution, examined the returned copies of the records of votes given in for senators in the several districts at the annual election in 1875, and the governor seasonably issued his summons to such persons as they had declared appeared to be chosen senators by a majority of votes to attend and take their seats on the first Wednesday of June following. The house of representatives sent to the superior court a statement of votes cast for senators in districts No. 2 and No. 4, as appeared by the returned copies of the records on file in the office of the secretary of state, and requested the opinion of the court whether the governor had the constitutional authority to issue to any one a summons to appear as senator-elect. The court declined to give the opinion requested, upon the ground that such opinion, if given, could have no greater weight or authority than a criticism of approval or disapproval by one branch of the government upon a past and completed act of another coördinate branch, performed in discharge of a duty expressly required of that department by the constitution.

HOUSE OF REPRESENTATIVES,
CONCORD, NEW HAMPSHIRE, June 3, 1875.

The following resolution having been introduced by Mr. Barton, of Newport, was this day duly passed by the House :

*Whereas,* In senatorial district No. 2, by the returned copies of the records on file in the office of the secretary of state, it appears that the whole number of votes cast was.....................7,706
of which

| | |
|---|---|
| Joseph Pettigrew had............................. | 1 |
| Arthur Deering.................................... | 2 |
| Scattering........................................ | 3 |
| Joshua C. Merrick................................ | 95 |
| Natt Head.......................................3,771 |
| James Priest....................................3,834 |

*And whereas,* In senatorial district No. 4, by the returned copies of the record on file in the same office, it appears that the whole number of votes cast was.........................................7,016
of which

| | |
|---|---|
| James M. Bishop had............................. | 1 |
| Benjamin M. Gilman............................... | 3 |
| Henry M. Putney.................................. | 1 |

| | |
|---|---|
| Moses Humphrey | 1 |
| Ira Osgood | 1 |
| G. E. Todd | 2 |
| Abraham Thorpe | 9 |
| Arthur Deering | 46 |
| George E. Todd | 3,457 |
| John Proctor | 3,495 |

*Therefore, resolved,* That the speaker of this House be directed to obtain the opinion of the superior court, as soon as possible, on the question whether the governor had the constitutional authority to issue to any one of the above-named persons a summons to appear as senator-elect on the first Wednesday of June instant.

CHARLES P. SANBORN,
*Speaker of the House of Representatives.*

*To the House of Representatives :*

The undersigned, justices of the superior court, have considered the question addressed to them by the house of representatives, by a resolution passed June 3, 1875, whether, upon the facts stated in the preamble to said resolution, the governor had constitutional authority to issue a summons to appear as senator to either of the persons mentioned as having received votes for that office in senatorial districts No. 2 and No. 4. Some doubts were at first entertained as to the precise question upon which the opinion of the justices was desired. The facts laid before us, however, are simply a statement of the vote in the two districts named, as shown "by the returned copies of the records on file in the office of the secretary of state," and our opinion is desired as to whether the governor had constitutional authority to issue a summons to either of the persons named. We have therefore concluded, upon consideration, that the House desire the justices to say whether, upon any possible state of facts, the governor and council, in discharging the duty laid upon them by Articles XXXIII and XXXIV of the constitution, could lawfully consider any other matter, or thing, except what appears upon the face of the copies of the records returned to the secretary of state by the several town-clerks, in accordance with Article XXXII of the constitution.

It is now matter of history that summonses were in fact issued by the governor to James Priest in the 2d district, and John Proctor in the 4th, and that those gentlemen appeared, and were sworn in as senators; and we think it a duty, which the justices on an occasion like this cannot avoid, to take judicial notice of those notorious historical facts. The resolution of the House, therefore, calls for an expression of opinion by the justices as to the correctness, or incorrectness, of the construction put by the governor and council upon that article of the constitution which prescribes their duty in the premises, and the legality, or illegality, of an act done by them in pursuance of that construction.

There is no principle more fundamental, more thoroughly inter-woven with the whole fabric of our republican institutions and form of government, and probably none more familiar to the great mass of intelligent citizens of the state, than that the three branches of the government,—the legislative, the executive, and the judicial,—are coördinate and independent. Neither can interfere with the duties or functions of either of the others, without striking a blow at the foundation upon which rests all security as well for private rights as the public welfare. The vital character of this provision is recognized, and its observance enforced in cogent terms, by the 37th article of our bill of rights, as follows : " In the government of this state, the three essential powers thereof,—to wit, the legislative, executive, and judicial,—ought to be kept as separate from and independent of each other as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity."

It does not admit of doubt that it was incumbent on the governor and council, in the first instance, to give construction to Articles XXXIII and XXXIV of the constitution, which prescribe their duty with respect to determining who were elected senators, and convening the senate. Indeed, this was an inseparable and necessary incident of the injunction laying upon them the duty to act. They could not obey that injunction, and act at all, without first determining the question in what mode they were bound to act by the constitution. Judge Cooley, a very high authority on questions of constitutional law, says,— " We have already seen that we are to expect in every constitution an apportionment of the powers of government. We shall also find certain duties imposed upon the several departments, as well as upon specified officers in each, and we shall likewise discover that the constitution has sought to hedge about their action in various ways, with a view to the protection of individual rights, and the proper separation of duties. And wherever any one is called upon to perform any constitutional duty, or to do any act in respect to which it can be supposed that the constitution has spoken, it is obvious that a question of construction may at once arise, upon which some one must decide before the duty is performed or the act done. From the very nature of the case, this decision must commonly be made by the person, body, or department upon whom the duty is devolved, or from whom the act is required." He then supposes several cases for illustration, and concludes,—" Under every constitution cases of this description are to be met with ; and though it will sometimes be found difficult to classify them, there can be doubt, when the case is properly determined to be one of this character, that the rule must prevail which makes the decision final." Cooley's Const. Lim. 39, 41. Further observations of the same learned writer, in pages following those quoted from, also throw much light upon the subject of our present inquiry.

We cannot hesitate to declare our opinion, that when the governor and council acted in the premises, that solemn act of the executive

department of the government necessarily involved a construction by them of the clause in the constitution prescribing their duties, and that such action cannot be regarded as the subject of revision by either of the other departments of the government, except in the mode distinctly provided in the constitution, namely, by the senate, who, by Article XXXV, are made the final judges of the elections, returns, and qualifications of their own members. The governor and council must act in this matter the same as the legislature or the court act in matters coming within the range of their several prescribed constitutional duties, upon their own official responsibility, under the sanction of their official oaths.

The somewhat exceptional provision found in our constitution, that the governor and council may, upon important questions of law and upon solemn occasions, require the opinions of the justices of the superior court, makes no difference as to the application of these principles. It is obviously for them first to determine whether an exigency, making it expedient to require such opinion, has arisen. And for the judicial or legislative branch of the government to offer the opinion of the court unasked, would obviously be an interference with the duties of the executive entirely unwarranted by the constitution.

In the view we take of this question, it calls for our opinion upon a past and completed act of the executive department of the government, performed in discharge of a duty expressly required of that department by the constitution. And in any aspect which the subject presents to our minds, such opinion, if given, could have no greater weight or authority than a criticism of approval or disapproval by one branch of the government upon the conduct of another coördinate branch. We have been unable, after most careful consideration, to discover any way in which such an official act on the part of the justices of this court could be made consistent with the grave duties imposed upon them by the constitution of the state.

If a mistake, or even an intentional wrong, should be committed by the executive, the remedies under our form of government are ample and prompt,—the wrong to be suffered temporary. If, on the other hand, a precedent of interference by one department with the discharge of its duties by another should be established by the form of a judicial decision, a dangerous blow would, in our judgment, be struck at one of the most vital principles of our system of government, the consequences of which no one could foretell, but which no intelligent and candid citizen could fail to see must be lasting and pernicious.

For these reasons, with a full sense of the responsibilities under which we act, we are constrained most respectfully to decline giving a further answer to the question contained in the resolution of the house of representatives, as we understand the purport and effect of that question.

E. L. CUSHING,
W. S. LADD,
ISAAC W. SMITH,

June 8, 1875.        *Justices of the Superior Court of Judicature.*