**OPINION OF THE JUSTICES of the Supreme Judicial Court given under the provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by the Senate in an Order Dated May 15, 1975.

Answered May 29, 1975.

SENATE ORDER PROPOUNDING QUESTIONS

STATE OF MAINE

In the Year of Our Lord One Thousand Nine Hundred and Seventy-Five

In Senate, May 15, 1975

WHEREAS, a bill entitled "AN ACT Relating to Ballots Containing Improper Write-in Votes" (Senate Paper 84, Legislative Document 255) is pending before the Senate of the 107th Legislature; and

WHEREAS, said bill has been amended by Senate Amendment "A" to S. P. 84, L. D. 255 under filing number S–146; and

WHEREAS, it appears to Members of the Senate that the provisions of the Maine Revised Statutes, Title 21, section 922, as enacted by chapter 414 of the public laws of 1973, mandatorily require a voter to make a cross or check mark in the square at the left and close to each nominee for whom he wishes to vote if such vote is to be counted; and

WHEREAS, the Attorney General of Maine, on November 5, 1974, issued an opinion to the office of the Secretary of State which opinion was circulated to municipal officials throughout the State of Maine; and

WHEREAS, the effect of said opinion was to nullify the mandatory provisions of Maine Revised Statutes, Title 21, section 922; and

WHEREAS, Senate Amendment "A" to Senate Paper 84 is designed to override the opinion of the Attorney General; and

WHEREAS, it appears to Members of the Senate of the 107th Legislature that certain provisions of this bill, as amended, present important questions of law and the occasion is a solemn one; now, therefore, be it

ORDERED, that in accordance with the provisions of the Constitution of this State, the Justices of the Supreme Judicial Court are hereby respectfully requested to give their Legislature their opinion on the following questions:

1. Would Senate Paper 84, if enacted, modify the existing law of the State of Maine as it related to the candidate for whom a vote would be counted if said cross or check was placed in the blank square below the candidates' names?

2. Would Senate Amendment "A" to Senate Paper 84, if enacted, modify the existing law of the State of Maine as it relates to the mandatory requirement of the Maine Revised Statutes, Title 21, section 922 that, in order for a vote to be effective, the cross or check mark must be placed in the square to the left of the nominee's name?

3. If the answer to question 2 is in the affirmative, in what manner would such amendment modify the existing law of the State of Maine under which the Legislature has prescribed the manner of marking the ballot which directions must be followed if the voter wishes his vote to be counted?

and be it further

ORDERED, that a copy of Senate Paper 84, Legislative Document 255; Senate Amendment "A" (filing number S–146) to Legislative Document 255; and memorandum of the Attorney General to Peter M. Damborg, Deputy Secretary of State dated November 5, 1974 be transmitted to the Honorable Justices of the Supreme Judicial Court as exhibits to this Order.

## ONE HUNDRED AND SEVENTH LEGISLATURE

Legislative Document No. 255

S. P. 84 In Senate, January 22, 1975

Referred to Committee on Election Laws. Sent down for concurrence and ordered printed.

HARRY N. STARBRANCH, Secretary

Presented by Senator Pray of Penobscot.

## STATE OF MAINE

## IN THE YEAR OF OUR LORD NINETEEN HUNDRED SEVENTY-FIVE

AN ACT Relating to Ballots Containing Improper Write-in Votes.

Be it enacted by the People of the State of Maine, as follows:

21 MRSA § 925, sub-§ 2, ¶ D, is enacted to read:

D. Failure to write in name and municipality of residence in write-in vote. If a voter marks a write-in square for an office, but does not write in a name and municipality of residence in the blank space provided to the right of the write-in square, the vote for that office shall not be counted.

## STATEMENT OF FACT

The purpose of this bill is to clarify the counting procedures for ballots containing improper write-in votes.

## STATE OF MAINE

## SENATE

## 107TH LEGISLATURE

SENATE AMENDMENT "A" to S. P. 84, L. D. 255, Bill, "AN ACT Relating to Ballots Containing Improper Write-in Votes."

Amend said Bill by striking out all of the first line after the enacting clause and inserting in place thereof the following:

'21 MRSA § 925, sub-§ 2, ¶¶ D and E are enacted to read:'

Further amend said Bill by inserting at the end before the Statement of Fact the following:

'E. Improper location of mark. If a voter fails to mark his ballot so that some part of the cross or check mark is within the proper square, the mark is ineffective and his vote for the candidate or question concerned must not be counted.'

## STATEMENT OF FACT

This amendment clarifies existing law, which law was placed in an ambiguous position as the result of an erroneous opinion of the Attorney General.

In Senate Chamber
Read and Adopted
(Motion to Indefinitely Postpone Lost)
May 13, 1975
HARRY N. STARBRANCH,
Secretary
Sent Down for Concurrence

Presented by Mr. Corson of Somerset.

Reproduced and distributed pursuant to Senate Rule 11–A.

May 13, 1975. (Filing No. S–146).

State of Maine

## INTER-DEPARTMENTAL MEMORANDUM

Date November 5, 1974

To Peter M. Damborg, Deputy Dept. Secretary of State

From Jon A. Lund, Attorney General Dept. Attorney General

Subject Marking of ballots for candidates in State-wide election

This is a reply to your memorandum of October 29 asking whether the Elections Division of the Secretary of State's Office should allow ballots for candidates seeking election to State-wide offices to be counted if marked on the right-hand side of the ballot at the November 5 General Election. The answer is yes, provided in the judgment of election officials, the mark is not considered to be a distinguishing mark.

The form of the ballot for the General Election is described in 21 M.R.S.A. § 702. With respect to the placement of squares (boxes) on the General Election Ballot, the square must be printed at the left and close to the name of each nominee or write-in space. 21 M.R.S.A. § 702, sub-§ 2, ¶ H. The statutes state "that a voter may designate his choice clearly by a cross or a checkmark" in the square. *Ibid.* The instructions required to be printed on the General Election Ballot specify that the voter is to make a cross (X) or a checkmark (✓) in the square at the left of the nominee or write-in candidate. 21 M.R.S.A. § 702, sub-§ 2, ¶ C.

Prior to the regular legislative session in 1965, the statutes on the subject of voting required a voter to mark his ballot so that the intersection of the cross or the apex of the checkmark was within the proper square, and if it was not so marked, the ballot was considered defective in law. That provision was repealed in 1965. P.L. 1965, C. 230. In deleting that statu-

tory provision, the Legislature no longer intends that a ballot be considered defective whenever the mark made by the voter is placed in an improper location, provided the intent of the voter is determinable. Presently, a ballot is considered defective only when it contains too many marks or fails to express a definite choice. A ballot is considered void when not prepared in accordance with Title 21 or when it contains a distinguishing mark.

In the event that a voter marks a ballot with either a cross or a check-mark to the right of the name of the nominee or write-in candidate, which mark appears in the space containing the name of the nominee or write-in candidate, the ballot should not necessarily be considered defective for that reason and the vote for that nominee or write-in candidate may be counted, unless in the judgment of the election officials the mark is considered to be a distinguishing mark.

## ANSWER OF THE JUSTICES

To the Honorable Senate of the State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answer to the questions propounded on May 15, 1975.

QUESTION NO. I: Would Senate Paper 84, if enacted, modify the existing law of the State of Maine as it related to the candidate for whom a vote would be counted if said cross or check was placed in the blank square below the candidates' names?

QUESTION NO. II: Would Senate Amendment "A" to Senate Paper 84, if enacted, modify the existing law of the State of Maine as it relates to the mandatory requirement of the Maine Revised Statutes, Title 21, section 922 that, in order for a vote to be effective, the cross or check mark must be placed in the square to the left of the nominee's name?

QUESTION NO. III: If the answer to question 2 is in the affirmative, in what manner would such amendment modify the existing law of the State of Maine under which the Legislature has prescribed the manner of marking the ballot which direc-

tions must be followed if the voter wishes his vote to be counted?

ANSWER: The Justices of the Supreme Judicial Court of Maine, and each of them, possess only those powers which are granted them expressly or by necessary implication by Article VI, Sec. 3, of the Constitution of Maine.

 The authority to give opinions when requested to do so by the Governor, or either branch of the Legislature, is by the terms of Article VI, Sec. 3, limited to *"important questions of law, and upon solemn occasions."*

This limitation on the power of the Justices has often been reviewed by this Court. See for example, Opinion of the Justices, 95 Me. 564, 51 A. 224 (1901) and Opinion of the Justices, 147 Me. 410, 105 A.2d 454 (1952). In Massachusetts and New Hampshire where a similar constitutional provision exists, those Courts have also had occasion to discuss such limitation. Opinion of the Justices, 126 Mass. 557 (1878); Answer of the Justices, 148 Mass. 623, 21 N.E. 439 (1889); Opinion of the Justices, 56 N.H. 574 (1875) and Opinion of the Justices, 67 N.H. 600, 43 A. 1074 (1892). The conclusions reached by the Justices of all three Courts are the same.

■ Before undertaking to answer any request for an advisory opinion from either the Governor, the House of Representatives or the Senate, we, the Justices to whom such request is addressed, must first determine whether we have the right to answer the question submitted. To do this we must always determine whether *"a solemn occasion exists."* Opinion of the Justices, Me., 281 A.2d 321 at 322 (1971).

The three questions now before us for consideration relate either to Legislative Document No. 255 or the Senate Amendment "A" to Legislative Document No. 255.

Legislative Document No. 255 contains a statement of fact reading as follows:

*"The purpose of this bill is to clarify the counting procedures for ballots containing improper write-in votes."*

Senate Amendment "A" to Legislative Document No. 255 contains as a statement of fact:

*"This amendment clarifies existing law, which law was placed in an ambiguous position as the result of an erroneous opinion of the Attorney General."*

The first two questions asked related to the extent, if any, the existing law (21 M.R.S.A. § 922) would be modified by the proposed statutes.

The third question is of the same tenor.

We are not asked any question concerning Legislative Document No. 255 or Senate Amendment "A" to Legislative Document No. 255, as such, but only as to their potential relationship to a statute already effective as law (21 M.R.S.A. § 922) and specifically addressed to the meaning of that statute. We conclude the effect of the questions is merely to ask us to interpret 21 M.R.S.A. § 922.

■ We regret we have come to the conclusion there is no *"solemn occasion"*

and we are, therefore, not authorized by the Constitution to answer the questions asked in an advisory opinion. See Opinion of the Justices, 153 Me. 216, 136 A.2d 508, 510 (1957).

In 1889 the Justices of the Supreme Judicial Court of Massachusetts were asked by the House of Representatives to interpret an existing statute. Answer of the Justices, 148 Mass. 623, 21 N.E. 439 (1889).

On that occasion the Justices said:

*"There is no doubt whatever as to the power of the House to pass any bill, within the limits of the Constitution, which it sees fit, in amendment or alteration of these sections. Our opinion, if given, would not in any way affect the power of the House to repeal these sections, or to amend them, or declare the meaning of them, if there is doubt about the meaning. Whatever it might be, the House might still think that it was its duty to make such changes as a majority of its members think are necessary, in order that the intention of the Legislature should be clearly expressed.*

*"The only exigency which seems to exist for requiring our opinion is that members of the House differ in their views as to the construction of the statute, and, if our opinion is given, it may affect the views of some members as to the necessity or propriety of amending it. As we have before said, this is not an unusual exigency, and does not create or present a solemn occasion within the fair meaning of the Constitution, so that we can properly give an ex parte opinion upon the construction of the statute in question."* 148 Mass. at 627, 21 N.E. at 440.

The situation before us is almost identical to that before the Justices of the Massachusetts Supreme Judicial Court described above. There, as here, the power

of the legislative body to pass the proposed bill was not in question. The doubt entertained by members of the legislative body related only to the proper interpretation of an existing statute.

From the questions submitted to us, it appears there is some disagreement among the members of the Legislature as to the correct interpretation of 21 M.R.S.A. § 922 occasioned doubtless by an Inter-departmental Memorandum of the Attorney General.

To answer the questions submitted would require us to disregard the limitations expressly placed on our authority by Sec. 3, Article VI, of the Constitution of Maine.

This we cannot do.

Dated at Portland, Maine, this twenty-ninth day of May, 1975.

Respectfully submitted:

 ARMAND A. DUFRESNE, Jr.
 RANDOLPH A. WEATHERBEE
 CHARLES A. POMEROY
 SIDNEY W. WENNICK
 JAMES P. ARCHIBALD
 THOMAS E. DELAHANTY