OPINION

OF THE JUSTICES OF THE SUPREME JUDICIAL COURT
GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION
\* \* \* \* \* \* \*
QUESTIONS PROPOUNDED BY THE SENATE IN AN ORDER
DATED APRIL 16, 1959
ANSWERED MAY 5, 1959

SENATE ORDER PROPOUNDING QUESTIONS
STATE OF MAINE

In Senate, April 16, 1959

WHEREAS, it appears to the Senate of the 99th Legislature that the following is an important question of law and the occasion a solemn one; and

WHEREAS, there is pending before the Senate of the 99th Legislature a bill entitled "An Act Creating a Motor Vehicle Accident Indemnity Fund," (Senate Paper 167, Legislative Document 338) : and,

WHEREAS, it is important that the Legislature be informed as to the constitutionality of the proposed bill, be it therefore

ORDERED, that in accordance with the provisions of the Constitution of the State the Justices of the Supreme Ju-

dicial Court are hereby respectfully requested to give the Senate their opinion on the following questions:

### 1.

Do any of the provisions of Senate Paper 167, Legislative Document 388 result in a diversion of revenues derived from fees, excises and license taxes relating to registration, operation and use of vehicles on public highways. in violation of Section 19 of Article IX of the Constitution of Maine?

### 2.

Do any of the provisions of Senate Paper 167, Legislative Document 388, provide for the raising of money by taxation for a private purpose in violation of Article 1, Sections 6 and 21, and Article IV, Part Third, Section 1, of the Constitution of Maine?

### 3.

Would Senate Paper 167, Legislative Document 388, "An Act Creating a Motor Vehicle Accident Indemnity Fund," if enacted by the Legislature, be constitutional?
A true copy.

Attest                                     CHESTER T. WINSLOW,
                                                Secretary of the Senate

Name: Weeks

County: Cumberland

In Senate Chamber Apr. 16, 1959. Read and passed.
CHESTER T. WINSLOW, Secretary.

NINETY-NINTH LEGISLATURE

**Legislative Document**                    **No. 388**

S. P. 167                    In Senate, February 4, 1959.

Referred to Committee on Judiciary. Sent down for concurrence and ordered printed.

CHESTER T. WINSLOW, Secretary.

Presented by Senator Ross of Sagadahoc.

## STATE OF MAINE

IN THE YEAR OF OUR LORD NINETEEN
HUNDRED FIFTY-NINE

AN ACT Creating a Motor Vehicle Accident Indemnity Fund.

Be it enacted by the People of the State of Maine, as follows:

**R. S., c. 22-A, additional.** The Revised Statutes are amended by adding a new chapter 22-A, to read as follows:

'Chapter 22-A.

**Motor Vehicle Accident Indemnity Fund.**

**Sec. 1. Definitions.** Unless a different meaning is plainly required by the context:

I. "Insurer" means an insurer duly authorized to transact business in this State and licensed to write policies of liability insurance on motor vehicles.

II. "Motor Vehicle Accident Indemnity Fund" or "fund" means the fund derived from sources specified in this chapter.

III. "Motor Vehicle Accident Indemnity Premium" or "premium" means the sum collected under this chapter and credited to the Motor Vehicle Accident Indemnity Fund.

IV. "Policy of liability insurance" means a policy which, as to the vehicle with respect to which it is issued, insures the named insured and any other person using or responsible for the use of such vehicle with the permission of the named insured against loss from any liability imposed by law or for damages, including for care and loss of services, because of bodily injury to or death of any person or injury to or destruction of property caused by accident and arising out of the ownership, operation, maintenance, control or use of such motor vehicle within the limits of the United States or the Dominion of Canada, subject to a limit, exclusive of interest and costs, of at least $10,000 because of injury to or death of one person in one accident, and, subject to the limit for one person, to a limit of at least $20,000 because of bodily injury to or death of 2 or more persons in any one accident, and to limit of at least $5,000 because of injury to or destruction of property of others in any one accident.

V. "Qualified person" means a resident of this State or the owner of a motor vehicle registered in this State which is involved in an accident.

VI. "Financial Responsibility Law" means the Financial Responsibility Law of the State of Maine.

VII. "Registration license year" means the period beginning January 1st and ending December 31st of each year.

VIII. "Treasurer" means the Treasurer of State acting as custodian of the Motor Vehicle Accident Indemnity Fund.

IX. "Uninsured motor vehicle" means a motor vehicle registered in this State as to which there is not in force a policy of liability insurance, or as to which proof of financial responsibility when required under the Financial Responsibility Law has not been furnished. Registration of a motor vehicle in this State shall be conclusive evidence for the purpose of seeking recovery under this chapter only, that the registered owner is a resident of this State.

Sec. 2. Provisions providing for indemnity fund. Every person registering an uninsured motor vehicle in this State for any registration license year, starting with the year beginning January 1, 1960, shall pay a premium of $15 at the time the vehicle is registered. This premium shall not be construed as full or partial payment of, or in lieu of, any fee, excise or license tax otherwise imposed by law, but regarded solely as a regulatory device imposed as a matter of public policy to eliminate or substantially reduce the numbers of uninsured motor vehicles in the State providing, until this is accomplished, that the State, as trustee of the money contributed by the uninsured motor vehicle owner, shall administer it as a separate fund for the specific purpose of indemnifying accident losses caused by such vehicles.

Any person offering to register a motor vehicle shall furnish the Secretary of State, as evidence that the vehicle is insured, a certificate of insurance or self-insurance in form prescribed by him, or a receipt showing that he has posted bond or made a financial security deposit under the provisions of the Financial Responsibility Law.

Premiums collected under this section shall be deposited in the General Fund to the credit of a special Motor Vehicle Accident Indemnity Fund, and shall be expended only as

provided in this chapter or as otherwise provided by law to carry out the provisions of this chapter.

All premiums collected by the Secretary of State shall be remitted to the treasurer within 30 days after receipt and become part of the fund, and held by the State in trust for the purposes of this chapter. The fund may be invested and reinvested in the same manner as state funds and shall be disbursed according to the order of the treasurer.

Sec. 3.  Premium refunded upon insuring motor vehicle. Any owner of an uninsured motor vehicle registered under section 2 shall be refunded the premium paid upon insuring such vehicle at any time during the same registration license year.

Sec. 4.  Registration suspended upon termination of insurance.  No policy of liability insurance issued on any motor vehicle registered in this State shall be cancelled or terminated other than by expiration of the term for which issued by any insurance carrier for any reason until at least 20 days after notice of cancellation or termination has been filed with the Secretary of State.

Within 20 days after the expiration of any policy of liability insurance issued on any motor vehicle registered in this State, if the same has not been renewed, the insurance carrier which issued such policy shall notify the Secretary of State that such policy has expired and has not been renewed.

The Secretary of State shall forthwith suspend the registration certificate and license plates for any motor vehicle for which a policy of liability insurance has been cancelled, or terminated or has expired unless the owner thereof files evidence in form satisfactory to the Secretary of State that the vehicle is covered by a policy of liability insurance, or

that he has paid or pays the premium prescribed for registering an uninsured motor vehicle.

Sec. 5.    Application for payment of judgment.    When any qualified person or his personal representative recovers a valid judgment in any court of competent jurisdiction in this State for an amount exceeding $100, exclusive of interest and costs, in an action for damages resulting from bodily injury to or the death of any person occasioned by or arising out of the ownership, operation, maintenance, control or use of a motor vehicle on or after January 1, 1960, by the judgment debtor, and any amount of the judgment remains unpaid, the judgment creditor may, upon the termination of all proceedings, including reviews and appeals, file a verified claim in the court in which the judgment was entered, and, upon 10 days written notice to the treasurer, apply to the court for an order directing payment out of the fund of the amount unpaid upon the judgment, subject to the limitations stated in section 8.  The court shall proceed upon such application in a summary manner.

Sec. 6.    Matters to be shown by applicant prior to payment.    In any proceeding before a court upon an application for payment of a judgment, the applicant shall show:

I.    That he has obtained a judgment as set out in section 5, stating the amount thereof and the amount owing thereon at the date of application.

II.    That he is not a person covered with respect to such injury or death by any workmen's compensation law, or the personal representative of such a person.

III.    That he is not a spouse, parent or child of the judgment debtor or the personal representative of such spouse, parent or child.

IV.    That he was not at the time of the accident, operating or riding in an uninsured motor vehicle owned by

him or his spouse, parent or child, and was not operating a motor vehicle in violation of an order of suspension or revocation.

V. That the judgment debtor at the time of the accident was not insured under a policy of liability insurance under the terms of which the insurer is liable to pay in whole or in part the amount of the judgment, and, had not posted bond, made a financial security deposit or filed a certificate of self-insurance.

VI. That he has caused to be issued a writ of execution upon the judgment that the officer executing the same has made a return showing that no assets, real or personal, of the judgment debtor, liable to be levied upon in satisfaction of the judgment, could be found or that the amount realized on the sale of such assets found, under the execution, was insufficient to satisfy the judgment, stating the amount so realized and the balance remaining due on the judgment after application thereon of the amount realized.

VII. That he has made reasonable searches and inquiries to ascertain whether the judgment debtor is possessed of assets, real or personal, liable to be sold or applied in satisfaction of the judgment.

VIII. That by such search he has discovered no assets, real or personal, liable to be sold or applied or that he has discovered certain of them, describing them, owned by the judgment debtor and liable to be so sold and applied and that he has taken all necessary action and proceedings for the realization thereof and that the amount thereby realized was insufficient to satisfy the judgment, stating the amount so realized and the balance remaining due on the judgment after application of the amount realized.

IX. That the application is not made by or on behalf of any insurer by reason of the existence of a policy of in-

surance whereby the insurer is liable to pay, in whole or in part, the amount of the judgment and that no part of the amount to be paid out of the fund is sought in lieu of making a claim or receiving a payment which is payable by reason of the existence of such a policy of insurance and that no part of the amount so sought will be paid to an insurer to reimburse or otherwise indemnify the insurer in respect of any amount paid or payable by the insurer by reason of the existence of such a policy or insurance.

X.    Whether he has recovered a judgment in an action against any other person against whom he has a cause of action in respect of his damages for bodily injury or death or damage to property arising out of the accident and stating the amounts recovered upon such judgments or the amounts, if any, received for compensation or indemnity for damages or other benefits for such injury or death or damage to property from any person other than the operator or owner of the motor vehicle causing such injury, death or damage.

In any case in which recovery from the fund is sought for injuries or damages sustained as the result of an accident which occurred outside this State, the applicant shall in addition be required to show that the judgment on which his claim is based was rendered on the basis of evidence which would have entitled him to recovery had the cause of action arisen in this State.

Each applicant at the time the application is heard shall file an affidavit with the court that there has not been nor will there be any collusion between the applicant and the owner or operator of or any guest in the uninsured motor vehicle.

Sec. 7.    Order for payment of judgment.    If the court is satisfied upon hearing:

I. Of the truth of all matters required to be shown by the applicant under section 6; and

II. That the applicant has fully pursued and exhausted all remedies available to him for recovering compensation for the damages which are the subject of the action in respect to which the judgment is given by:

A. Commencing action against all persons against whom the applicant might reasonably be considered as having a cause of action in respect of such damages and prosecuting every such action in good faith to judgment; and

B. Taking all reasonable steps available to him to collect on every judgment so obtained and all other reasonable steps available to him to recover compensation for such damages and by applying the proceeds of any judgment or recovery so obtained towards satisfaction of the amount due upon the judgment for payment of which the claim is made; then the court shall issue an order directed to the treasurer requiring him, subject to section 8, to pay from the fund the amount of the judgment or the balance owing thereon, and, the treasurer shall comply with the order.

In making an order, the court shall reduce the amount that it would otherwise require to be paid from the fund by a sum equal to any amounts for compensation or indemnity for damages or other benefits which the applicant has received or, in the opinion of the court, is likely to collect from any person other than the judgment debtor.

Sec. 8. Limitations on payments from the fund. No order shall be made for the payment, and the treasurer shall make no payment, out of the fund, of:

I. Any claim for less than $100.

II. The first $100 of any judgment or of the unsatisfied portion thereof, or

III. The unsatisfied portion of any judgment which, after deducting $100 therefrom, exceeds:

A. The maximum amount or limit of $10,000, exclusive of interest and costs, on account of injury to, or death of, one person in any one accident, and

B. The maximum amount or limit, subject to such limit for any one person so injured or killed, of $20,000 exclusive of interest and costs, on account of injury to, or death of, more than one person in any one accident, and

C. The maximum amount or limit of $5,000, exclusive of interest and costs, for damages to property in any one accident.

These maximum amounts shall be reduced by any amount received or recovered as specified in section 7. Any amount paid out of the fund in excess of the amounts so authorized may be recovered by the treasurer in an action brought by him against the person receiving the same.

Sec. 9. Consent, fraudulent and collusive judgments. No claim shall be allowed and ordered paid out of the fund if the court finds, upon a hearing of the application for payment from the fund:

I. That it is founded upon a consent judgment.

II. That the judgment upon which the claim is founded was obtained by fraud, or by collusion of the plaintiff and of any defendant in the action, relating to any matter affecting the cause of action upon which such judgment is founded or the amount of damages assessed.

Sec. 10. Assignment of judgment. The treasurer shall not pay any sum from the fund, in compliance with an order

made for the purpose, in any case in which the claim is founded upon a judgment until the applicant assigns the judgment to the treasurer and, thereupon, the treasurer shall be deemed to have all the rights of the judgment creditor under the judgment and shall be entitled to enforce the same for the full amount thereof with interest and costs and if more money is collected upon any such judgment than the amount paid out of the fund, the treasurer shall pay the allowance, after reimbursing the fund, to the judgment creditor.

The treasurer shall give notice to the Secretary of State of the entry of any judgment obtained by him, or of any judgment upon which a claim is made against the fund and of the payment of any such judgment. Payment from the fund of a claim upon a judgment shall not be considered satisfaction thereof for the purposes of the Financial Responsibility Law.

Sec. 11.  Privileges not restored until fund reimbursed. Where the license of any person, or the registration of a motor vehicle registered in his name, has been suspended or cancelled under the Financial Responsibility Law, and the treasurer has paid from the fund any amount in or towards satisfaction of a judgment recovered against that person, the cancellation or suspension shall not be removed, nor the license or registration restored, nor shall any new license be issued to, or registration be permitted to be made by, that person until he has:

I.  Repaid in full to the treasurer the amount so paid by him, together with the expenses incurred by the fund, as certified by the treasurer, in connection with such payment, together with interest thereon at 4% per year from the date of such payment; and

II.  Satisfied all requirements of the Financial Responsibility Law in respect of giving proof of financial responsibility.

A discharge in bankruptcy shall not relieve a person from the penalties and disabilities provided in this chapter.

Sec. 12. Operating an uninsured motor vehicle without payment of premium. Any owner of an uninsured motor vehicle who operates an uninsured motor vehicle on which the premium has not been paid, or any owner who permits such uninsured motor vehicle to be operated, shall be punished by a fine of not more than $500 or by imprisonment for not more than 30 days, or by both.

The Secretary of State, upon receipt of evidence that the owner of an uninsured motor vehicle on which the premium has not been paid has operated or has permitted such vehicle to be operated shall suspend the registration and license of such owner. No such vehicle nor any other vehicle shall be registered or re-registered in the name of such person nor shall any license be issued to or license be restored to such person until:

I. One year has passed since the date of such suspension and surrender of such person's license and registration, and

II. The person has complied with the Financial Responsibility Law in respect of giving proof of ability to respond in damages for future accidents.

Sec. 13. False or untrue statements. Any person who knowingly files any notice, statement or other document required under this chapter which is false or untrue or contains any material misstatement of fact shall be punished by a fine of not more than $1,000 or by imprisonment for not more than one year, or by both.

Sec. 14. Purposes for which moneys may be disbursed from fund. All moneys deposited to the credit of the Motor Vehicle Accident Indemnity Fund shall be held in trust by

the State for the satisfaction of claims allowed under this chapter, and shall be disbursed out of the fund for the following purposes only:

I. Payment of the expenses of the Secretary of State and treasurer of State incurred in administering this chapter during each fiscal year.

II. Payment of claims allowed under this chapter.

Sec. 15. Reliance upon other process not prevented. Nothing in this chapter shall prevent a plaintiff in any proceeding or action from proceeding upon any other remedy or security available at law or diminish the liability of any defendant.'

Sec. 2. Effective date. This act shall be effective for the calendar year 1960 and for the subsequent years until changed by legislative enactment.

### ANSWER OF THE JUSTICES

To the Honorable Senate of the State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on April 16, 1959.

QUESTION (I): Do any of the provisions of Senate Paper 167, Legislative Document 388, result in a diversion of revenues derived from fees, excises and license taxes relating to registration, operation and use of vehicles on public highways, in violation of Section 19 of Article IX of the Constitution of Maine?

ANSWER: We answer in the affirmative.

Section 19 of Article IX of the Constitution of Maine provides:

"All revenues derived from fees, excises and license taxes relating to registration, operation and use of vehicles on public highways, and to fuels used for the propulsion of such vehicles shall be expended solely for cost of administration, statutory refunds and adjustments, payment of debts and liabilities incurred in construction and reconstruction of highways and bridges, the cost of construction, reconstruction, maintenance and repair of public highways and bridges under the direction and supervision of a state department having jurisdiction over such highways and bridges and expense for state enforcement of traffic laws and shall not be diverted for any purpose, *provided* that these limitations shall not apply to revenue from an excise tax on motor vehicles imposed in lieu of personal property tax."

The manifest purpose of the quoted section is to prevent diversion of such revenues to other than highway purposes. Although the proposed act in terms refers to the charge to be imposed on uninsured motorists as a "premium" and specifically provides that "this premium shall not be construed as full or partial payment of, or in lieu of, any fee, excise or license tax otherwise imposed by law," the fact remains that the proposed act imposes a charge which is prerequisite to the registration of a motor vehicle. Such a charge, however designated, clearly falls within the spirit if not the exact letter of the constitutional limitation and may not therefore be diverted to purposes other than those enumerated in the quoted section of the Constitution. *Opinion of the Justices,* 152 Me. 449.

QUESTION (II): Do any of the provisions of Senate Paper 167, Legislative Document 388, provide for the raising of money by taxation for a private purpose in violation of

Article 1, Sections 6 and 21, and Article IV, Part Third, Section 1, of the Constitution of Maine?

ANSWER: We answer in the negative.

The proposed act attempts to remedy a social problem which is properly a matter of public concern and interest. The increase of traffic congestion upon our highways with its natural accompanying hazards has produced a mounting risk of damage and injury common to all citizens. The whole economy of the state is directly and adversely affected by the presence upon the highways of many financially irresponsible and uninsured motorists. The situation may well be likened to that which existed in the area of industrial unemployment and which resulted in remedial legislation providing for compensation to the unemployed person even though he might be neither indigent nor in straightened financial circumstances. It was clearly recognized that a public rather than a private purpose was thereby served. So here, more is involved than mere redress of a private civil wrong and we are satisfied that the basic and underlying purpose of the proposed legislation is to benefit the people as a whole. The public interest is further served by the incorporation of the funds collected into a trust fund to be held and controlled by the State. See *Crommett, et al.* v. *Portland,* 150 Me. 217; *State* v. *Vahlsing,* 147 Me. 417.

QUESTION (III): Would Senate Paper 167, Legislative Document 388, "An Act Creating a Motor Vehicle Accident Indemnity Fund," if enacted by the Legislature, be constitutional?

ANSWER: In view of the foregoing answers, it is unnecessary to answer this question. We respectfully suggest that the question is so general in form as to lack that precision

necessary to inform the justices of the exact nature of the inquiry.

Dated at Augusta, Maine, this fifth day of May, 1959.

Respectfully submitted:

ROBERT B. WILLIAMSON
DONALD W. WEBBER
WALTER M. TAPLEY, JR.
FRANCIS W. SULLIVAN
F. HAROLD DUBORD
CECIL J. SIDDALL