**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by the Governor in a Communication Dated Nov. 24, 1982.

Answered Dec. 14, 1982.

1342

*State of Maine*

[seal]   OFFICE OF THE GOVERNOR

AUGUSTA, MAINE 04333

**November 24, 1982**

To the Honorable Justices of the Supreme Judicial Court:

By virtue of the authority conferred upon the Governor by the Constitution of Maine, Article VI, Section 3, and believing that the questions contained herein are important questions of law and that it is a solemn occasion,

I, Joseph E. Brennan, Governor of Maine, submit the following statement of facts and questions of law and respectfully ask the opinion of the Justices of the Supreme Judicial Court thereon:

STATEMENT OF FACTS

On December 22, 1981, 1,343 petitions, containing 39,214 valid signatures were delivered to the Secretary of State to initiate legislation entitled "AN ACT to Adjust Annually Individual Income Tax Laws to Eliminate Inflation-Induced Increases in Individual State Income Taxes." The Secretary of State reviewed the petitions, deter-

mined the initiative petitions to be valid, and transmitted the initiated bill on January 4, 1982, to the 110th Maine Legislature. Because the 110th Maine Legislature failed to enact the measure, I proclaimed on April 22, 1982, that the measure would be submitted to the voters in a referendum election on November 2, 1982.

The question submitted to the voters, the form of which is attached as "Appendix A" * hereto, was "[s]hall 'AN ACT to Adjust Annually Individual Income Tax Laws to Eliminate Inflation-Induced Increases in Individual State Income Taxes,' become law?" Pursuant to 1 M.R.S.A. § 353 (Supp.1982), the official explanation provided by the Secretary of State and approved by the Attorney General described the measure in the following terms:

This initiated bill would adjust the individual income tax for inflation, so taxpayers are not put into higher tax brackets as a sole result of the effects of national inflation.

Under the bill, the dollar amounts of the personal exemption and the standard deduction, as well as the dollar bracket amounts in the tax rate schedules, will be multiplied annually by the 'inflation factor,' a formula which measures inflation, and is based on the federal Consumer Price Index. In this manner, the personal exemption, the standard deduction and the dollar bracket amounts in the tax rate schedules would be increased in times of inflation. If approved, this bill would be retroactive to the tax year beginning January 1, 1981.

A "YES" vote approves the annual adjustment of the State income tax for inflation.

A "NO" vote disapproves this adjustment.

On November 22, 1982, the Secretary of State canvassed and determined the results of the referendum election relative to the tax indexing measure. A copy of this certification of the Secretary of the State is attached hereto as "Appendix B." * Pursu-

ant to Article IV, Part 3, Section 19 of the Maine Constitution, I must make a public proclamation of these results of this election on or before December 2, 1982. Pursuant to the same constitutional provision, the measure will then become effective thirty days after such proclamation, unless the measure entails expenditures in an amount in excess of available and unappropriated state funds, in which case it will become effective forty-five days after the Legislature next convenes in regular session.

Serious legal questions have arisen with regard to the interpretation of the tax indexing measure and to whether its implementation would be unconstitutional. Specifically, Section 5 of the Act provides that "[t]his chapter shall take effect for tax years beginning on or after January 1, 1981." This provision, if interpreted to render the measure retroactive for the tax years beginning January 1, 1981, will require the State to locate and refund to Maine taxpayers approximately $32 million. According to the Affidavit of Rodney L. Scribner, Commissioner of the Department of Finance and Administration, which is attached hereto as "Appendix C," * the State currently does not have available and unappropriated funds to fund the retroactive portion of the tax indexing measure.

This situation raises several immediate problems which I believe warrant the attention of the Court. First, pursuant to 5 M.R.S.A. § 1661 *et seq.* (1979 & Supp.1982), I am in the process of developing a budget proposal governing the operations of State government which I must submit to the Legislature when it convenes. Second, failure to address the issues raised by the tax indexing measure, expeditiously and completely, may affect the State's credit rating. Third, in light of these problems, it may be necessary for the Legislature to pass further legislation relative to the tax indexing measure, and, to do so, it must know precisely what its options are.

Therefore, I respectfully request answers to the following questions:

* Appendices not herein reproduced.

## QUESTIONS OF LAW

1. Does "AN ACT to Adjust Annually Individual Income Tax Laws to Eliminate Inflation-Induced Increases in Individual Income Taxes" (the "Act"), by its terms, apply retroactively to tax years beginning 1981, and thereby require the State of Maine to pay Maine taxpayers tax refunds?

2. Does Section 5 of the Act, which states that the Act shall take effect for tax years beginning "on or *after*" January 1, 1981, make the Act inapplicable to tax years prior to the date that the measure becomes law, or, in the alternative, require further implementing legislation to specify the year in which the Act is first to become effective?

3. If the Act applies retroactively, are municipalities and other governmental entities in Maine which have received revenue sharing or other funds from the State of Maine for tax years to which the Act applies, now obligated to refund to the State of Maine a proportional share of the tax refunds, based on the retroactive tax rate adjustments to be made by the State Tax Assessor?

4. If, by its terms, the Act applies retroactively, does Article IV, Part 3, Section 19 of the Maine Constitution, which renders the Act "inoperative" until 45 days after the Legislature next convenes in regular session, bar the retroactive application of the Act?

5. Does Article IX, Section 9 of the Maine Constitution render the Act unconstitutional in that the Act indexes individual income taxes to an external standard in the form of the Consumer Price Index?

6. If the Act is constitutional, does the Legislature have the power to amend, repeal, or repeal and replace the Act?

7. If the Act is constitutional, does the Legislature have the power to amend, repeal, or repeal and replace the Act subject

to the approval of the voters in another public referendum?

8. If the Act is not repealed or repealed and replaced by the Legislature, will it, pursuant to Article IV, Part 3, Section 19 of the Maine Constitution, take effect forty-five days after the Legislature next convenes?

Respectfully submitted,
/s/ Joseph E. Brennan
JOSEPH E. BRENNAN
Governor

## ANSWERS OF THE JUSTICES

To His Excellency, Joseph E. Brennan, Governor of Maine:

In compliance with the provisions of section 3 of article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following responses to the questions you propounded on November 24, 1982.

QUESTION 1: Does "AN ACT to Adjust Annually Individual Income Tax Laws to Eliminate Inflation-induced Increases in Individual Income Taxes" (the "Act"), by its terms, apply retroactively to tax years beginning 1981, and thereby require the State of Maine to pay Maine taxpayers tax refunds?

The question as framed sets out two separate inquiries. The first inquiry is, in sum, whether the Act "by its terms" applies retroactively to tax years beginning January 1, 1981. The second inquiry is whether, if the Act does apply retroactively, it "thereby" requires the payment of tax refunds to Maine taxpayers. We answer the first inquiry but decline to answer the second.

▆▆▆ We answer the first inquiry in the affirmative, by stating our opinion that the Act,[1] by its terms, applies retroactively to the tax years beginning January 1, 1981,

---

1. "AN ACT to Adjust Annually Individual Income Tax Laws to Eliminate Inflation-induced Increases in Individual Income Taxes," approved by the people on November 2, 1982, bore the designation "Initiated Bill 2, L.D.1737"

when presented to the 110th Legislature. A copy of L.D.1737 is appended to this opinion as Appendix 1. The Act in section 5 provides:

This chapter shall take effect for tax years beginning on or after January 1, 1981.

and thereafter. In section 5, the Act states that it "shall take effect for tax years beginning on or after January 1, 1981." The ordinary rules of statutory construction apply to interpreting initiated measures. *See Seeber v. Washington State Public Disclosure Commission,* 96 Wash.2d 135, 141, 634 P.2d 303, 306 (1981). Where the meaning of terms used in a statute is plain, we need look no further to conclude that the law means "exactly what it says." *Concord General Mutual Insurance Co. v. Patrons-Oxford Mutual Insurance Co.,* 411 A.2d 1017, 1020 (Me.1980).

■ The phrases at issue here are in common usage in the Maine income tax statutes. "Shall take effect *for*" is obviously a variant of the language commonly used to give income tax statutes retroactive application. *See, e.g.,* P.L. 1981, ch. 411, § 2 (law took effect on September 18, 1982, but stated, "This Act shall become effective *with regard to* tax years beginning on or after January 1, 1981"); P.L.1977, ch. 686, § 6 (law took effect on July 1, 1978, but amended 36 M.R.S.A. § 5102(8)(D) to define "Maine Net Income" as excluding certain sums "*[f]or* the tax years beginning on or after January 1, 1977"); P.L.1975, ch. 17, § 2 (law took effect on October 1, 1975, but stated, "This Act shall be effective *as to* tax years ending on or after December 31, 1974"). (Emphasis added) It is an equally common practice to use the term "tax year beginning on or after" a certain date to mean *every* tax year beginning on or after that date. *See, e.g.,* P.L.1981, ch. 470, § 174 (amending P.L.1979, ch. 649, § 2 so that the last paragraph of 36 M.R.S.A. § 5102(5) applies to "tax years beginning on or after January 1, 1980," instead of merely to "tax years beginning January 1, 1980"). If any further confirmation of the plain meaning of the language of section 5 were needed, it is provided by the "explanatory statement" prepared for the electorate by the Attorney General, pursuant to 1 M.R.S.A. § 353 (Supp.1982–83), which stated, "If approved, this bill would be retroactive to the tax year beginning January 1, 1981."

We must decline to answer the second inquiry contained in Question 1. The question is unclear because it is not explicit whether, in using the word "thereby" in addressing the refund issue, the question intends to restrict the answer to consideration of the effect of the express terms of the Act, or intends consideration of the effect of other provisions of law, once the retroactivity of the Act is established. In either event, the question is a hypothetical one, resolution of which may involve determination of facts and application of provisions of law other than the terms of the Act. We are, therefore, uncertain as to what provisions of law we are asked to interpret.

■ As recently as last year, five of our number discussed the scope of the Justices' constitutional authority (as well as duty) to advise the Governor, the Senate, or the House of Representatives "on important questions of law, and upon solemn occasions." *See Opinion of the Justices,* 437 A.2d 597, 610–11 (Me.1981). We now repeat that statement:

Only subject to carefully confined conditions does the Maine Constitution give the Justices of the Supreme Judicial Court the extraordinary responsibility of rendering their opinion outside the context of any concrete, fully developed factual situation and without the benefits of adversary evidentiary and legal presentations. An advisory opinion, which represents the views of the individual Justices and is not the decision of the Supreme Judicial Court sitting as the Law Court, is constitutionally permissible only "on important questions of law, and upon solemn occasions." Me. Const. art. IV, § 3 (1965). Upon receiving a request for an advisory opinion from the Governor or either house of the Legislature, the "first duty [of each Justice] ... must be to determine whether the case is one in which the law allows the opinions of the Justices to be given." *Opinion of the Justices,* Me., 339 A.2d 483, 491 (1975). "[T]he boundaries set by the Constitution on our duty to furnish opinions are juris-

dictional in nature and must be strictly observed in order to preserve the fundamental principle of the separation of the judicial from the executive and legislative branches of government." [*Opinion of the Justices,* 383 Mass. 895, 424 N.E.2d 1092, 1106 (1981), *quoting Answer of the Justices,* 362 Mass. 914, 917, 291 N.E.2d 598, 600 (1975).]

*Id.*

We have consistently declined to answer questions as to which we cannot determine "the exact nature of the inquiry." *Opinion of the Justices,* 155 Me. 125, 141, 152 A.2d 494, 501 (1959); *see also Opinion of the Justices,* 216 A.2d 656, 661 (1966).

QUESTION 2: Does Section 5 of the Act, which states that the Act shall take effect for tax years beginning "on or *after*" January 1, 1981, make the Act inapplicable to tax years prior to the date that the measure becomes law, or, in the alternative, require further implementing legislation to specify the year in which the Act is first to become effective?

We answer both inquiries of Question 2 in the negative.

■ To construe "on or after January 1, 1981," to make the Act inapplicable to tax years prior to the date that the measure becomes law would render section 5 a superfluity, since a statute that is silent as to the date of its application is without more assumed to apply only prospectively from the date it becomes law. *See Coates v. Maine Employment Security Commission,* 406 A.2d 94, 97 (Me.1979); *Opinion of the Justices,* 370 A.2d 654, 668 (Me.1977). Statutory language should not be read so as to render it useless if a reasonable alternative construction is possible.

The suggestion implicit in the second inquiry of Question 2, that the "on *or after*" language might give the Legislature authority to specify the year in which the Act is first to apply, is equally implausible for the reasons stated in our answer to the first part of Question 1. Section 5 has exactly the same meaning in the Act as approved by the people as it would have had if L.D. 1737 had been enacted by the Legislature; obviously, no further action by the Legislature would have been required by section 5 if the Act had been enacted by that body.

QUESTION 3: If the Act applies retroactively, are municipalities and other governmental entities in Maine which have received revenue sharing or other funds from the State of Maine for tax years to which the Act applies, now obligated to refund to the State of Maine a proportional share of the tax refunds, based on the retroactive tax rate adjustments to be made by the State Tax Assessor?

We must decline to answer Question 3.

■ As discussed in our response to the second inquiry contained in Question 1, the Justices of the Supreme Judicial Court are authorized to give advisory opinions to the other branches of government only on important questions of law and upon solemn occasions. Under those constitutional restrictions, we must decline to answer questions that are "so general in form as to lack that precision necessary to inform the justices of the exact nature of the inquiry." *Opinion of the Justices, supra,* 155 Me. at 140–41, 152 A.2d 494; *see also Opinion of the Justices, supra,* 216 A.2d at 661. We cannot determine whether Question 3 is an important question of law or whether a solemn occasion exists requiring its answer, because from its general language we are unable to discern with any confidence its intended import or scope. Neither would we be able to answer Question 3 in its imprecise and generalized form.

QUESTION 4: If, by its terms, the Act applies retroactively, does Article IV, Part 3, Section 19 of the Maine Constitution, which renders the Act "inoperative" until 45 days after the Legislature next convenes in regular session, bar the retroactive application of the Act?

We answer Question 4 in the negative.

■ We conclude that the 45-day proviso of the Maine Constitution, article IV, part 3, section 19,[2] does not bar the retroactive

---

2. Me.Const. art. IV, pt. 3, § 19, provides in relevant part:

Any measure referred to the people and

application of the Act as provided in section 5.[3] The question assumes, as do we in answering it, that retroactive application of tax indexing, starting January 1, 1981, will entail "expenditure in an amount in excess of available and unappropriated state funds," thus activating the 45-day proviso of section 19.

That proviso mandates that the Act "remain inoperative" until 45 days after the Legislature next convenes in regular session. To declare that a law must remain inoperative until a certain date, however, does not mandate that the law shall not apply to or affect events that occurred prior to its operative date. "All new laws, when applied, are applied to a state of affairs created by past events." *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 943 (Me.1982). A retroactivity provision, such as section 5 of the Act, merely determines the *legal significance* of acts or events that happened before the Act became operative. *See Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d 814, 816 (Me.1980). There is thus no inherent conflict or contradiction between the constitutional requirement that the Act "remain inoperative" until a specified date and the statutory provision that will cause it to apply, once operative, to events that occurred well before that date.

Statutes enacted by the Legislature are subject to a constitutional constraint similar to that of section 19. Section 16[4] of the same part 3 of article IV of the Maine Constitution permits nonemergency acts passed by the Legislature to become effective only after the lapse of 90 days following the recess of the Legislature. In upholding the power of the Legislature to pass such legislation,[5] the Law Court has never observed any conflict between the effective date requirements of section 16 and the retroactive provision of the particular piece of legislation. Just as a legislative enactment that is made to apply to a period of time prior to its effective date does not violate section 16, so may an initiated measure approved by the people be given retroactive application by its terms without violating section 19.

QUESTION 5: Does Article IX, Section 9 of the Maine Constitution render the Act unconstitutional in that the Act indexes individual income taxes to an external standard in the form of the Consumer Price Index?

We answer Question 5 in the negative.

■ The Act specifies that the national Consumer Price Index (CPI), published by the Bureau of Labor Statistics of the United States Department of Labor, is to be utilized as part of an articulated equation

approved by a majority of the votes given thereon shall, unless a later date is specified in said measure, take effect and become a law in thirty days after the Governor has made public proclamation of the result of the vote on said measure, which he shall do within ten days after the vote thereon has been canvassed and determined; provided, however, that any such measure which entails expenditure in an amount in excess of available and unappropriated state funds shall remain inoperative until forty-five days after the next convening of the Legislature in regular session, unless the measure provides for raising new revenues adequate for its operation.

3. See n. 1 above for the text of section 5 of the Act.

4. Me. Const. art. IV, pt. 3, § 16, provides in relevant part:

No Act or joint resolution of the Legislature, except such orders or resolutions as pertain solely to facilitating the performance of the business of the Legislature, of either branch, or of any committee or officer thereof, or appropriate money therefor or for the payment of salaries fixed by law, shall take effect until ninety days after the recess of the session of the Legislature in which it was passed, unless in case of emergency, which with the facts constituting the emergency shall be expressed in the preamble of the Act, the Legislature shall, by a vote of two-thirds of all the members elected to each House, otherwise direct.

5. *See, e.g., Sabasteanski v. Pagurko*, 232 A.2d 524, 525 (Me.1967) (legislature may enact retrospective statutes that affect remedies but not substantive rights); *Tiedemann v. Johnson*, 316 A.2d 359, 365 (Me.1974) (tax statute not unconstitutional merely because it is retroactive in effect).

that is in turn employed by the State Tax Assessor to make annual adjustments in specified individual income tax brackets, personal exemptions, and standard deductions. Question 5 asks whether, by utilizing the CPI to index taxes, the Act violates Me.Const. art. IX, § 9, which provides:

> The Legislature shall never, in any manner, suspend or surrender the power of taxation.

It is our opinion that utilizing the CPI as a factor for tax indexing does not constitute an unconstitutional surrender or delegation of the taxing power.

The Law Court has recognized that, as a general principle, constitutional prohibitions against legislative delegation do not prevent all delegation of functions that could be performed by the Legislature. Rather, "the goal has been to make certain that delegated powers were guided by meaningful standards." *State v. Boynton,* 379 A.2d 994, 995 (Me.1977).

> [T]he legislative authority must declare the policy or purpose of the law and set up standards or guides to indicate the extent, and prescribe the limits, of the discretion it is delegating.

*Id.; see also Opinion of the Justices,* 261 A.2d 58, 76 (Me.1970).

Applying these general principles to taxation, the United States Supreme Court has held that:

> It may be laid down as a general proposition that where a legislature enacts a specific rule for fixing a rate of taxation, by which rule the rate is mathematically deduced from facts and events occurring within the year and created without reference to the matter of that rate, there is no abdication of the legislative function,

but on the contrary, a direct legislative determination of the rate.

*Michigan Central Railroad Co. v. Powers,* 201 U.S. 245, 297, 26 S.Ct. 459, 464, 50 L.Ed. 744 (1906).

Although there is little Maine authority on the narrow delegation question raised by the indexing provision of the Act,[6] authority from other jurisdictions assists us in our inquiry. In *First Federal Savings and Loan Association of Boston v. State Tax Commission,* 372 Mass. 478, 491, 363 N.E.2d 474, 483 (1977), the court held that the Massachusetts legislature did not unconstitutionally delegate its taxing powers by enacting a statute providing that state tax deductions for savings and loan associations were to be determined in part by reserve requirements imposed by a federal agency.[7] The Massachusetts court noted that "[i]n numerous instances a taxpayer's obligation is affected by the conduct of other persons, but those other persons are not exercising the authority of the Legislature to tax. Their action may influence the amount of the tax payable, but the taxing power has not been delegated to them." *Id.*

A Michigan court made a similar distinction in *Michigan Baptist Homes and Development Co. v. City of Ann Arbor,* 55 Mich. App. 725, 223 N.W.2d 324 (1974). A state statute that limited a particular property tax exemption to nonprofit corporations obtaining financing under the National Housing Act was held not to be an unconstitutional delegation to the Secretary of Housing and Urban Development, even though the Secretary, in effect, determined who would obtain financing under the National Housing Act. The court observed:

---

**6.** In *Boston Milk Producers, Inc. v. Halperin,* 446 A.2d 33, 39 (Me.1982), the Court "suppose[d] for the sake of argument" that the invalid "milk tax" at issue might not have amounted to an unconstitutional surrender of taxing power if the contingency on which it was to go into effect was "an event having significance independent of a decision by potential tax payers of the question whether to make the statute effective by voting for the tax."

**7.** Article XXIII of the Declaration of Rights of the Massachusetts Constitution provides:

> No subsidy, charge, tax, impost, or duties, ought to be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people or their representatives in the legislature.

The federal official does not make a determination as to who shall receive the exemption. He merely determines which nonprofit corporations are eligible to receive Federal financing under [the National Housing Act].

*Id.* at 737, 223 N.W.2d at 330.

By approving the initiated act, the people of Maine made a policy judgment to give Maine taxpayers some relief from the tax consequences of inflation. Maine voters, not the United States Department of Labor, enacted the formula for adjusting dollar bracket amounts in the tax rate schedules, standard deduction, and personal exemption. That formula uses the Consumer Price Index, which is determined by objective economic criteria and is widely used to measure adjustments in wages, pensions, and other money transfers. Use of the CPI in the Act's adjustment formula does not unconstitutionally delegate the power to tax to the United States Department of Labor.

QUESTION 6: If the Act is constitutional, does the Legislature have the power to amend, repeal, or repeal and replace the Act?

QUESTION 7: If the Act is constitutional, does the Legislature have the power to amend, repeal, or repeal and replace the Act subject to the approval of the voters in another public referendum?

We must decline to answer Questions 6 and 7. In both, the Governor inquires as to the powers of the Legislature. Only the Legislature, and not the Governor, is in the position to take immediate action on the answers. It is well established that the Justices will not answer a request made by one branch of government for an advisory opinion regarding the power, duty, or authority of another branch. *See Opinion of the Justices,* 132 Me. 491, 497, 167 A. 176, 179 (1933).

As discussed in our response to the second inquiry contained in Question 1, the Maine Constitution permits the Justices of the Supreme Judicial Court to give advice to the other great branches of government only upon solemn occasions. Where the requesting body can take no immediate action on the answer, no solemn occasion exists to provide the required constitutional authority for an advisory opinion. *Opinion of the Justices,* 260 A.2d 142, 146 (Me.1969). That a response to a question would merely aid a governor in proposing measures to the Legislature does not present a solemn occasion. *Opinion of the Justices,* 153 Me. 216, 219, 136 A.2d 508, 510 (1957). Until the Legislature has under active consideration a bill to amend or modify the initiated measure, the question of the powers of the Legislature lacks live gravity; until then, the question is tentative, hypothetical, and abstract. *See Opinion of the Justices,* 370 A.2d 654 (Me.1977) (refusal of advisory opinion in regard to bill still pending in committee and not yet before the inquiring body of the Legislature).

The hypothetical nature of Questions 6 and 7 distinguishes them from the first inquiry of Question 1 and from Questions 2, 4, 5, and 8, which we find we do have constitutional authority to answer. The Governor asks the latter questions in order to be guided in the discharge of his immediate statutory obligation to prepare a balanced state government budget for the biennium commencing July 1, 1983, and to transmit it to the Legislature early next month. *See* 5 M.R.S.A. §§ 1661–1670 (1979 & Supp. 1982–83) (in particular, §§ 1664 and 1666). As to those questions, the Governor himself "is faced with the immediate necessity of performing [an] official act as to which our opinions [are now] requested." *Opinion of the Justices,* 260 A.2d 142, 146 (Me.1969).

QUESTION 8: If the Act is not repealed or repealed and replaced by the Legislature, will it, pursuant to Article IV, Part 3, Section 19 of the Maine Constitution, take effect forty-five days after the Legislature next convenes?

We answer Question 8, as we understand it, in the affirmative. The question assumes, as do we in answering it, that the 45-day proviso of article IV, part 3, section 19 of the Maine Constitution controls to make the Act "remain inoperative

until forty-five days after the next convening of the Legislature in regular session." Question 8, which was propounded on November 24, 1982, thus asks whether the Act, if it is not repealed, will cease to be inoperative 45 days after December 1, 1982, the date on which the Legislature was next to convene in regular session after November 24, 1982.[8] We conclude that it does; that the Act becomes operative on January 15, 1983.

The meaning of the section 19 proviso must be determined in connection with the preceding section. Section 18 authorizes the presentation of a petition initiating a measure only at a regular session of the Legislature. If the Legislature fails to enact this initiated measure *at that session,* the measure must be submitted to a vote of the people. The section 19 proviso enables the Legislature at its *next regular session* to meet any fiscal problem precipitated by the approval of an unfunded measure entailing expenditures in excess of available and unappropriated funds.

The language of article IV at the time when the proviso was added to section 19 in 1951 supports our conclusion. Just two years earlier, section 18 had been amended to require presentation of initiated measures "within 45 days after the date of convening of the Legislature in regular session." Me. Const.amend. LXVI. Under article IV, part 3, section 1, there was then only one "regular session" of the Legislature, which convened biennially on the first Wednesday of January. The 1951 amendment to section 19 was proposed to make "temporarily inoperative" any unfunded initiated measure approved by the people "until 45 days after the next convening of the Legislature in regular session." 1951 Resolves, ch. 126. By specifying "in regular session," the amendment avoided the possibility that the 45-day period would be activated by a special session of the Legislature. Thus, the amendment provided ample opportunity for the Legislature to enact funding measures or take any other constitutionally authorized steps by insuring that the 45-day period would commence only at the next regular session after the regular session to which the measure had been presented. The subsequent amendments to sections 1 and 18 do not alter the plain meaning of the proviso added to section 19 in 1951.

Respectfully submitted
VINCENT L. McKUSICK
EDWARD S. GODFREY
DAVID G. ROBERTS
GENE CARTER
ELMER H. VIOLETTE
DANIEL E. WATHEN

### APPENDIX 1

### SECOND REGULAR SESSION

### ONE HUNDRED AND TENTH LEGISLATURE

Legislative Document                                              No. 1737

Initiated Bill 2      House of Representatives, January 6, 1982

Transmitted to the Clerk of the House of the 110th Maine Legislature by the Secretary of State on January 4, 1982 and 2,500 ordered printed.

EDWIN H. PERT, Clerk

---

8. The date of the convening of the first regular session of any Maine Legislature is set as the first Wednesday of December following the general election. *See* Me. Const. art. IV, pt. 3, § 1.

## STATE OF MAINE

### IN THE YEAR OF OUR LORD
### NINETEEN HUNDRED AND EIGHTY-TWO

**AN ACT to Adjust Annually Individual Income Tax Laws to Eliminate Inflation-induced Increases in Individual State Income Taxes.**

Be it enacted by the People of the State of Maine as follows:

Sec. 1. 36 MRSA §5111, as amended by PL 1977, c. 686, §7, is further amended by adding at the end a new paragraph to read:

The nominal dollar amounts of this section are subject to annual adjustment under section 5403.

Sec. 2. 36 MRSA §5124-A, as enacted by PL 1977, c. 477, §17, is amended by adding at the end a new paragraph to read:

The nominal dollar amounts of this section are subject to annual adjustment under section 5403.

Sec. 3. 36 MRSA §5126, as last amended by PL 1979, c. 615, §4, is further amended by adding at the end a new paragraph to read:

The nominal dollar amounts of this section are subject to annual adjustment under section 5403.

Sec. 4. 36 MRSA c. 841 is enacted to read:

### CHAPTER 841

### INFLATION ADJUSTMENTS

§5401. Findings and purpose

Inflation erodes the value of personal exemptions and deductions in the Maine individual income tax structure and distorts fiscal equity among taxpayers. Inflation-induced increases in individual income tax revenues result in annual collections that exceed the amounts anticipated by legislative actions establishing rates, exemptions, deductions and other features of the Maine individual income tax. Furthermore, the income tax laws of this State, in combination with economic inflation, have caused inequitable treatment of the taxpayers because the application of inflexible, statutorily prescribed rates of tax, standard deduction and

personal exemption to increasing personal incomes has resulted in increasing the taxpayer's tax liability while the taxpayers purchasing power has remained the same or, in some instances, has decreased. It is the purpose of this Act to correct this situation by requiring that certain components of the individual income tax structure be adjusted in order to compensate for the impact of inflation.

§5402. Definitions

As used in this chapter, unless the context indicates otherwise the following terms have the following meanings.

1. Consumer Price Index. "Consumer Price Index" means the average over a 12-month period of the National Consumer Price Index, not seasonally adjusted, published monthly by the Bureau of Labor Statistics, United States Department of Labor designated as the "National Consumer Price Index for all Urban Consumers - United States City Average."

2. Percentage adjustment factor. "Percentage adjustment factor" means one-half of the percentage increase in the Consumer Price Index for the 12-month period ending June 30th of the current taxable year over the Consumer Price Index for the 12-month period ending June 30th of the immediately preceding taxable year, expressed as a decimal rounded to the nearest one-thousandth.

3. Inflation factor. "Inflation factor" means the percentage adjustment factor plus 1. The inflation factor for any taxable year shall not exceed 1.070.

§5403. Annual adjustments for inflation

On or about September 15th of each taxable year, the State Tax Assessor shall multiply the inflation factor for that taxable year by the dollar amounts of both the standard deduction and the personal exemption as adjusted under this chapter in the immediately preceding taxable year. The State Tax Assessor shall also multiply the inflation factor by certain dollar bracket amounts in the tax rate schedule for each filing status, as follows:

1. Single individuals and married persons filing separate returns. The inflation factor shall be multiplied by the dollar bracket amounts, as adjusted under this chapter in the immediately preceding taxable year, on the tax rate schedule for single individuals and married persons filing separate returns, up to and including the dollar bracket amount for taxable income not over $15,000, as adjusted. In addition, the inflation factor shall be multiplied by the dollar bracket amount for taxable income of $15,000, as adjusted.

2. Heads of households. The inflation factor shall be multiplied by the dollar bracket amounts, as adjusted under this chapter in the immediately preceding taxable year, on the tax rate schedule for unmarried or legally separated taxpayers who qualify as heads of household, up to and including the dollar bracket amount for taxable income not over $22,500, as adjusted. In addition, the inflation factor shall be multiplied by the dollar bracket amount for taxable income of $22,500, as adjusted.

3. Married taxpayers and other filing joint returns. The inflation factor shall be multiplied by the dollar bracket amounts, as adjusted under this chapter in the immediately preceding taxable year, on the tax rate schedule for married taxpayers and widows and widowers filing joint federal returns, up to and including the dollar bracket amount for taxable income over $30,000, as adjusted. In addition, the inflation factor shall be multiplied by the dollar bracket amount for taxable income of $30,000, as adjusted.

The dollar amounts of the standard deduction, the personal exemption and the dollar bracket amounts listed above, adjusted by application of the inflation factor and rounded to the nearest $100, shall be effective for the then current taxable year and shall be incorporated into the income tax forms and instructions of the State Tax Assessor for that taxable year.

If the inflation factor for any taxable year is 1.000 or less, no adjustment shall be made for that taxable year and the dollar amounts of the standard deductions, personal exemption and the dollar bracket amounts of the tax rate schedules listed above shall remain at the prior taxable year's level.

Sec. 5. Effective date. This chapter shall take effect for tax years beginning on or after January 1, 1981.

STATEMENT OF FACT

This bill provides for the annual indexation of the individual income tax system. Adjustments to the tax structure will be computed upon an inflation factor based upon the National Consumer Price Index as determined by the United States Department of Labor.

4569010482

To His Excellency, Joseph E. Brennan, Governor of Maine:

I concur with my colleagues in their responses to Questions 1 to 7, inclusive. In my opinion, however, we are constitutionally restrained from answering the final question.

In the first place, although it is not immediately operative, the Act approved by the people in November "takes effect and becomes a law" in thirty days after the Governor's proclamation. Such is the clear language of Article IV, part 3, section 19. At once rights of individual taxpayers will be affected thereby. An advisory opinion, to be sure, does not have the binding effect of a judgment. We should not, however, render an opinion that may be prejudicial to the interests of the individual taxpayers to whom it is adverse. *Opinion of the Justices,* 95 Me. 564, 566, 51 A. 224, 227 (1901).

In the second place, I perceive no way in which the Governor can act upon an answer to this final question in the exercise of the executive powers entrusted to him. *Opinion of the Justices,* 72 Me. 542, 560 (1881) (opinion of Libbey and Walton, JJ.). Moreover, the circumstance that a governor would be assisted in proposing measures to the Legislature is not enough to meet the requirements of Maine's Constitution. *Opinion of the Justices,* 153 Me. 216, 219, 136 A.2d 508, 510 (1957).

For these reasons we should decline to answer Question 8.

Respectfully submitted
DAVID A. NICHOLS