MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2020 ME 117
Docket:      Cum-20-227
Argued:      October 1, 2020
Decided:     October 1, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, and HORTON, JJ.


DAVID A. JONES

v.

SECRETARY OF STATE et al.


PER CURIAM

[¶1]  David A. Jones, Jonathan Kinney, and Joshua Morris (collectively, "Jones") have filed a motion to stay the effect of the mandate in our decision issued in this matter on September 22, 2020, *Jones v. Sec'y of State*, 2020 ME 113, --- A.3d ---, pending their petition for a writ of certiorari to the Supreme Court of the United States.  *See* M.R. App. P. 14(a)(3).[1]  The Committee for Ranked Choice Voting and three individuals (collectively, "Committee") and the Secretary of State oppose the motion.  Because we conclude that Jones has not satisfied the test for us to stay the effect of the mandate, we deny the motion.

---

[1]  We note that the Supreme Court also has the authority, by statute and rule, to grant a stay.  *See* 28 U.S.C.S. § 2001(f) (LEXIS through Pub. L. No. 116-158); Sup. Ct. R. 23.

2

[¶2] A request for a stay in the Law Court is "subject to the same standards for obtaining injunctive relief that are applied in the trial courts." *Me. Equal Justice Partners v. Commissioner*, 2018 ME 127, ¶ 31, 193 A.3d 796. "To obtain a stay, the moving party must demonstrate that (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party; (3) it has a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and (4) the public interest will not be adversely affected by granting the injunction." *Id.* (quotation marks omitted).

A.    Irreparable Injury, Harm to Other Parties, and the Public Interest

[¶3] Jones argues that he will suffer irreparable harm if a stay is not granted because the ranked-choice-voting law will be in effect for the November election despite what he contends are an adequate number of signatures in support of the people's veto petition. The Secretary of State indicates, with support from the affidavit of the Deputy Secretary of State in charge of the Bureau of Corporations, Elections and Commissions, that he has already finalized templates and printed more than a million ballots. The Secretary of State further represents, also with support from the affidavit, that ranked-choice ballots have already been delivered to voters serving in the

military and to civilian voters living outside the United States, and that more than 1,800 ballots have already been returned by voters. *Cf. Knutson v. Dep't of Sec'y of State*, 2008 ME 129, ¶ 14, 954 A.2d 1054 (authorizing a stay when ballot templates had not been finalized). Jones does not dispute these facts.

[¶4] The public has a strong interest in using ranked-choice voting if—as the Secretary of State determined and we affirmed—the proponents of the people's veto did not obtain enough valid signatures and the Act to Implement Ranked-choice Voting for Presidential Primary and General Elections in Maine, P.L. 2019, ch. 539, is legally in effect.[2] *See Jones*, 2020 ME 113, ¶ 35, --- A.3d ---. Voting has begun with voters using this method, and there is a strong public interest in not changing the rules for voting at this late time.[3] *See Purcell v. Gonzalez*, 549 U.S. 1, 4-6 (2006).

---

[2] The effective date for the Act, absent a valid people's veto petition, would have been June 16, 2020—ninety days after the adjournment of the Second Regular Session of the Maine Legislature. *See* Me. Const. art. IV, pt. 3, § 16. Because the petition for a people's veto was submitted before that date, the effective date of the Act is September 23, 2020, the day following our mandate affirming the Secretary of State's determination that there were insufficient valid signatures. *See* Me. Const. art. IV, pt. 3, § 17, cl. 2; 21-A M.R.S. § 905 (2020).

[3] Although Jones contends that, even if our decision were vacated, the ranked-choice ballots could be tabulated without using ranked-choice voting by counting only the votes marked for the voter's first choice, the public would—in that situation—have been asked to vote on a ballot that was misleading or confusing and did not comply with all dictates of 21-A M.R.S. § 601 (2020), including the requirement that the ballot state how to designate choices, with special instructions for ranked-choice contests, *id.* § 601(2)(A).

The ballot samples supplied by the Secretary of State include the following instructions for the November ranked-choice ballots:

4

[¶5]   Admittedly, if the ranked-choice law were not properly in effect because of a valid people's veto petition,[4] the public would have an interest in using non-ranked-choice voting and having the opportunity to vote on the people's veto question.  The balance of harms and the public interest, however, weigh against our grant of Jones's requested stay.

B.      Likelihood of Success on the Merits

[¶6]   We next consider Jones's likelihood of success on the merits.  Jones argues that our decision, which applies a standard less stringent than strict scrutiny, stands in contrast to federal courts' holdings that strict scrutiny applies to circulator requirements.  Jones also contends that, even applying the standard that we used, the requirement in Maine law that petition circulators

---

To vote, fill in the oval like this ●

To rank your candidate choices, fill in the oval:

> • In the 1st column for your 1st choice candidate.
> • In the 2nd column for your 2nd choice candidate, and so on.

Continue until you have ranked as many or as few candidates as you like.

Fill in no more than one oval for each candidate or column.

To rank a Write-in candidate, write the person's name in the write-in space and fill in the oval for the ranking of your choice.

[4] The people's veto petition was submitted to the Secretary of State on June 15, 2020, within the time allowed by the Maine Constitution, and if the petition were valid, the Act would not take effect unless and until the voters rejected the people's veto question.  *See* Me. Const. art. IV, pt. 3, § 17, cls. 1, 3.

be registered to vote in the municipalities where they reside, *see* Me. Const. art. IV, pt. 3, § 20; 21-A M.R.S. § 903-A (2020), is overly restrictive of First Amendment rights because an affidavit would adequately ensure that a person was a resident in Maine at the time of petition circulation.

[¶7]  In support of his position that our legal reasoning conflicts with federal case law, Jones cites cases that are distinguishable from the matter before us because the courts in those cases did not review registration requirements in a jurisdiction in which the residency requirement had already been upheld in a strict-scrutiny analysis.[5]  *See Hart v. Sec'y of State*, 1998 ME 189, ¶ 13, 715 A.2d 165, *cert. denied*, 525 U.S. 1139 (1999) (holding that Maine's residency requirement survives strict scrutiny).  The cases that Jones cites in his motion apply strict scrutiny in their review of residency requirements—a review that we already performed in *Hart*, 1998 ME 189, 715 A.2d 165.  *See Libertarian Party of Va. v. Judd*, 718 F.3d 308, 311 (4th Cir. 2013) (reviewing a residency requirement for petition circulation); *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1025 (10th Cir. 2008) (reviewing "Oklahoma's ban on

---

[5]  Jones's argument for strict-scrutiny review rests on a mistaken characterization of the burden that Maine's laws impose upon circulators; it focuses narrowly on the severe consequence of *failing to comply* with the election laws in this particular case rather than on the burden of *compliance* with those laws, which was the dominant focus of the Court's decisions in *Meyer v. Grant*, 486 U.S. 414, 422-25 (1988), *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 191-97 (1999), and similar cases.

non-resident petition circulators"); *Nader v. Brewer*, 531 F.3d 1028, 1030 (9th Cir. 2008) (reviewing the "requirement that circulators of nomination petitions be residents of Arizona"); *Lerman v. Bd. of Elections*, 232 F.3d 135, 139 (2d Cir. 2000) (reviewing a residency requirement for signature witnesses). Thus, we are not persuaded that this line of cases undermines our opinion, *Jones*, 2020 ME 113, --- A.3d ---, which is supported by Supreme Court precedent. *See Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 186-87, 192-97 (1999); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 344-45 (1995); *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 788-90 (1983); *Storer v. Brown*, 415 U.S. 724, 730 (1974).

[¶8] As to Jones's argument that an affidavit alone would be sufficient to establish residency, we reiterate the significance of simple and timely *verification* of residency. *See Jones*, 2020 ME 113, ¶ 33, --- A.3d ---. In Maine, local registrars perform the task of residency verification, requiring "proof of identity and residency" when a person registers to vote—a task that the Secretary of State would not have the time to perform when reviewing petitions within the truncated timeline set forth by statute. 21-A M.R.S. § 121(1-A) (2020); *see* 21-A M.R.S. §§ 111(3), (4), 112, 121, 122, 905(1) (2020). As we stated in our opinion, because we upheld the residency requirement in *Hart*,

1998 ME 189, ¶ 13, 715 A.2d 165, Maine has not violated the First Amendment by including in the Maine Constitution and elections statutes "a simple and, more importantly, *verifiable* way for the Secretary of State to determine a person's residency in Maine at the time of circulation of a petition." *Jones*, 2020 ME 113, ¶¶ 33-34, --- A.3d ---.

[¶9]  We do not consider it likely that Jones will prevail in his petition to the Supreme Court, especially given the limited record presented with respect to the First Amendment challenge through judicial review of the Secretary of State's decision and the ongoing printing, distribution, and return of ranked-choice ballots.  We cannot conclude that Jones has established at least "a substantial possibility" of success on the merits of either his petition for a writ of certiorari or the review that would follow if a writ of certiorari were granted.[6] *Me. Equal Justice Partners*, 2018 ME 127, ¶ 31, 193 A.3d 796.

[¶10]  Finally, although in *Knutson*, 2008 ME 129, ¶ 14, 954 A.2d 1054, we granted a partial stay of our mandate for the brief, finite period preceding the creation of final ballot templates, the templates at issue here have already

---

[6]  The Committee has argued that Jones lacks standing to petition for a writ of certiorari because 21-A M.R.S. § 905(2) (2020) allows an appeal by any signer of an invalidated petition without requiring a showing of a particularized injury.  It is arguable, however, that the Legislature, by enacting section 905(2), established a particularized injury under state law.  Because we need not decide this issue to rule on the motion before us, we decline to opine on the question.

been produced, more than a million ballots have been printed, and in some instances, ballots have been sent out to, and returned by, voters. We decline to stay the effect of our issued mandate in these circumstances.

The entry is:

Motion to stay the effect of the mandate denied.

---

Patrick N. Strawbridge, Esq. (orally), Consovoy McCarthy PLLC, Boston, Massachusetts, for movant-appellees David A. Jones et al.

Aaron M. Frey, Attorney General, and Phyllis Gardiner, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for respondent-appellant Secretary of State

James G. Monteleone, Esq. (orally), and Matthew J. Saldaña, Esq., Bernstein Shur, Portland, for respondent-appellants The Committee for Ranked Choice Voting et al.